**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00181-HBB**

**LINDA GAIL CLARK**                                                      **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION**                            **DEFENDANT**

<u>**MEMORANDUM OPINION
AND ORDER**</u>

BACKGROUND

Before the Court is the complaint (DN 1) of Linda Gail Clark ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered March 18, 2020 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On November 29, 2016, Plaintiff filed an application for Disability Insurance Benefits (Tr. 15, 157-58). Plaintiff alleged that she became disabled on March 15, 2015 as a result of hearing loss in the right ear, bipolar II disorder, dependent personality disorder, bronchitis, hypercholesterolemia, peripheral neuropathy, degenerative spine, scoliosis, carpal tunnel bilaterally, hernia, and arthritis (Tr. 15, 59, 74, 179). On October 3, 2018, Administrative Law Judge Susan Brock ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 15, 36). Plaintiff and her non-attorney representative, Kristen Brown, participated from Elizabethtown, Kentucky[1] (Id.). Gail H. Franklin, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated February 13, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-28). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 15, 2015, the alleged onset date (Tr. 17). At the second step, the ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease, generalized osteoarthritis with bilateral trochanteric bursitis, cervicalgia, peripheral neuropathy, carpal tunnel syndrome, personality disorder, depressive disorder, and post-traumatic stress disorder (Id.). The ALJ also found that Plaintiff has the following non-severe impairments: bronchitis, chronic

---

1 The Court notes an inconsistency in the administrative record. The ALJ's decision reports that Plaintiff and Kristen Brown, a non-attorney representative, participated by video from Elizabethtown, Kentucky (Tr. 15). But the hearing transcript indicates Plaintiff and Mr. Sharpenstein, a non-attorney representative, appeared in person at the administrative hearing in Louisville, Kentucky (Tr. 36). Documentation in the record indicates that both Kristen Brown and John Sharpensteen represented Plaintiff (Tr. 152, 153).

obstructive pulmonary disease (COPD), hypercholesterolemia, hernia, and plantar fasciitis (Tr. 17-18). Further, the ALJ indicated that the medical evidence of record did not establish that the following claimed conditions are medically determinable: alleged hearing loss in the right year, sleep apnea, bladder and bowel difficulties, and gastroesophageal reflux disease (GERD) (Tr. 18-19).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19). At the fourth step, ALJ found that Plaintiff has the residual functional capacity (RFC) to perform medium work with the following exceptions: can frequently climb ramps and stairs, ladders, ropes, and scaffolds; can frequently stoop, kneel, crouch and crawl; can frequently handle and finger bilaterally; can perform simple routine tasks with no more than occasional interaction with coworkers and supervisors and no contact with the public; and can occasionally tolerate workplace changes gradually introduced (Tr. 21).

Additionally, at the fourth step, the ALJ relied on testimony from the vocational expert to find that Plaintiff is capable of performing her past relevant work as a hospital housekeeper because this work does not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 26). The ALJ also relied on testimony from the vocational expert to make alternative findings for the fifth step in the sequential evaluation process (Tr. 26-27). Based on the testimony of the vocational expert, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 27). Therefore, the

ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 15, 2015, through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 154-56). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. §

4

405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

      4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

      5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

## Finding No. 5

The ALJ's RFC determination is set forth in Finding No. 5 (Tr. 21). Plaintiff argues the physical and mental limitations in the ALJ's RFC determination are not supported by substantial evidence in the record (DN 14-1 PageID # 1143-48, 1148-51). Plaintiff explains that the ALJ discounted the only medical opinions in the record expressing functional restrictions and then relied on her own lay interpretation of the raw medical evidence to craft "out of whole cloth" the physical and mental restrictions in the RFC finding (Id.). The Court will address Plaintiff's challenges to the physical and mental restrictions separately.

    1. Physical Restrictions

Plaintiff argues that the physical limitations in the ALJ's RFC determination are not supported by substantial evidence because she discounted the only medical opinion in the record expressing physical functional limitations, acknowledging it was inconsistent with the record, and then relied on her own lay interpretation of the raw medical evidence to craft the RFC assessment with physical limitations that were made up "out of whole cloth" (DN 14-1 PageID # 1143-48). Plaintiff claims, instead of making a lay determination based on only diagnostic evidence, the ALJ

should have developed a complete record by obtaining opinions addressing her physical functional limitations from either a treating source, a consultative examiner, or a medical expert testifying at the hearing (Id.).

Defendant argues the ALJ's physical RFC restricting Plaintiff to medium work with certain postural and manipulative limitations is supported by substantial evidence in the record because it is consistent with the medical evidence and the opinion of Dr. Allen Dawson, the non-examining state agency medical consultant, that Plaintiff can perform a full range of medium work (DN 19 PageID # 1168-74).

The RFC finding is an ALJ's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An ALJ makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3). In making the residual functional capacity finding, the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a).

In the instant case, there is only one medical opinion expressing functional limitations imposed by Plaintiff's physical impairments. It was prepared at the reconsideration level by Dr. Allen Dawson, a non-examining state agency physician (Tr. 79, 82-84). On April 21, 2017, Dr. Dawson reviewed the administrative record and opined that Plaintiff can occasionally lift and/or carry (including upward pulling) 50 pounds; frequently lift and/or carry 25 pounds; can stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; can sit (with normal breaks) for a total of about six hours in an eight-hour workday; and her ability to push and/or pull (including operation of hand and/or foot controls) is unlimited, other than shown, for lift and/or carry (Tr. 82-83). Additionally, Dr. Dawson indicated that Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations (Tr. 83). In sum, Dr. Dawson opined that Plaintiff can perform a full range of medium work.

After Dr. Dawson rendered his medical opinion, the administrative record received more than 270 pages of additional medical evidence addressing treatment of Plaintiff's physical and mental impairments from May 2017 through August 2018 (Tr. 781-1064). During the administrative hearing, Plaintiff testified extensively about her physical and mental impairments in response to questioning by her counsel and the ALJ (Tr. 39-53).

The ALJ provided an accurate summary of the medical evidence in the record and Plaintiff's testimony during the administrative hearing (Tr. 22-25). After noting that the opinion of Dr. Dawson indicated that Plaintiff can perform a full range of medium work, the ALJ appropriately considered the subsequently received medical and testamentary evidence in assessing how much weight to give the opinion (Tr. 25). *See* Kepke v. Comm'r of Soc. Sec., 636

F. App'x 625, 632-33 (6th Cir. 2016); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009). The ALJ commented as follows:

> Additional medical evidence received at the hearing level supports finding that the claimant has additional limitations. The undersigned notes that she gave more consideration than the state agency physician on the combined effects of all the claimant's severe and non-severe impairments. The record establishes that due to all the claimant's impairments, the claimant has additional limitations and can perform a reduced range of [medium] work.[2]

(Tr. 25). Plaintiff asserts that the ALJ acknowledged the opinion is stale by concluding the subsequently received evidence warranted greater restrictions. Notably, the ALJ did not specifically indicate how much weight she gave to Dr. Dawson's opinion. More importantly, instead of relying on the above quoted general comment, the Court will compare the medical opinion of Dr. Dawson with the ALJ's physical RFC finding to assess whether the ALJ actually concluded the opinion was stale.

The ALJ's RFC finding, limiting Clark to performing medium work with certain postural and manipulative limitations, is generally consistent with the opinion of Dr. Dawson limiting Clark to performing a full range of medium work (*Compare* Tr. 21, *with* Tr. 82-83). Thus, the ALJ substantially relied on his medical opinion when she made her physical RFC determination. But the ALJ also depended on subsequently received evidence to justify adding certain postural and manipulative limitations. Specifically, the ALJ found that Plaintiff "can frequently climb ramps and stairs, ladders, ropes, and scaffolds[;] . . . frequently stoop, kneel, crouch, and crawl[;] . . .

---

2 The ALJ's decision indicates "sedentary" instead of "medium" (Tr. 25). The Court concludes this is a typographical error because Finding No. 5 specifically indicates Plaintiff can perform a reduced range of "medium" work (Tr. 21). Further, the ALJ's vocational findings at the fourth and fifth steps are based on Plaintiff being able to perform a reduced range of "medium" work (Tr. 26-27, 54-56).

[and] can frequently handle and finger bilaterally" (Tr. 21). The term "'[f]requently' means occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)" (Tr. 82). Thus, the ALJ found that Clark can perform these postural and manipulative activities for up to six hours in an eight-hour workday.

The above analysis confirms that the ALJ substantially relied on the medical opinion of Dr. Dawson, as well as subsequently received medical and testamentary evidence, in making the physical RFC finding. Considering the circumstances, Plaintiff has not demonstrated that the ALJ concluded that Dr. Dawson's opinion was stale at the time she made the physical RFC findings.

As mentioned above, assessing a claimant's subjective allegations is integral step in making the RFC finding. 20 C.F.R. § 404.1529(a). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id.

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her objectively established medically conditions were not entirely consistent with the medical evidence and other evidence in the record. Therefore, it was appropriate for the ALJ to consider other information and factors that may be relevant to the degree of pain and other symptoms alleged. 20 C.F.R. § 404.1529(c)(3).

For example, the ALJ appropriately considered the level of Plaintiff's daily activities in determining the extent to which her purported pain is of disabling severity (Tr. 22-24). 20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also considered the frequency she sought treatment for the allegedly disabling conditions in assessing her subjective complaints (Tr. 22-24). 20 C.F.R. § 404.1529(c)(3)(v). Additionally, the ALJ considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence (Tr. 22-24). 20 C.F.R. § 404.1529(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and the other alleged symptoms to the extent she testified (Tr. 22-24). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's subjective allegations. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v.

Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's subjective allegations are supported by substantial evidence and comport with applicable law.

Notably, the ALJ's findings regarding Plaintiff's subjective allegations played a substantial role in assessing the postural and manipulative limitations included in the physical RFC finding (Tr. 22-24). While the ALJ considered the subsequently received medical evidence in making the physical RFC finding, she did so within the framework established by Dr. Dawson's medical opinion indicating Plaintiff can perform a full range of medium work (Tr. 22-25). Thus, the ALJ's physical RFC restricting Plaintiff to medium work with certain postural and manipulative limitations is supported by substantial evidence in the record because it is consistent with the medical evidence, Plaintiff's testimony to the extent it is consistent with the medical evidence, and the medical opinion of Dr. Dawson. Additionally, the record and the ALJ's decision indicates she did not rely on raw medical data in the medical records to make, "out of whole cloth," the physical RFC finding.

2. Mental Restrictions

Plaintiff next argues that the mental limitations in the ALJ's RFC determination are not supported by substantial evidence because the ALJ discounted the only medical opinions in the record expressing mental functional limitations, conceding they were stale, and then she relied on her own lay interpretation of the raw medical evidence to craft the RFC assessment with mental limitations that were made up "out of whole cloth" (DN 14-1 PageID #1148-51). Plaintiff argues, instead of making a lay determination based on only diagnostic evidence, the ALJ should have

developed a complete record by obtaining an opinion addressing her mental functional limitations from either a treating source, a consultative examiner, or a medical expert testifying at the hearing (Id.).

Defendant asserts that the ALJ's mental RFC is supported by substantial evidence (Id. PageID # 1174-78). Defendant points out that the ALJ imposed more restrictive limitations than those expressed in the opinions of the non-examining state agency medical consultants (Id.). Defendant suggests that the ALJ's discounting of the state agency opinions benefitted Plaintiff's case because the ALJ imposed more restrictive limitations (Id.).

There are two medical opinions addressing Plaintiff's mental impairments. They were prepared at the initial and reconsideration levels by non-examining state agency psychologists, Jennifer Meyer, Ph.D., and Kay Barnfield, Psy.D. (Tr. 64-66, 79-81). The regulations direct that ALJs are not required to adopt such opinions, but they "must consider" them according to 20 C.F.R. § 404.1527[3] because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).

On February 8, 2017, Dr. Meyer reviewed the administrative record and found that Plaintiff's mental impairments imposed mild limitations on her ability to understand, remember, or apply information; mild limitations on her ability to interact with others; mild limitations on her ability to concentrate, persist, or maintain pace; and mild limitations on her ability to adapt or manage oneself (Tr. 65).[4] Thus, Dr. Meyer concluded that Plaintiff's medically determinable

---

3 The rule in 20 C.F.R § 404.1527 applies in evaluating medical opinion evidence from the non-examining state agency physicians because Clark filed her claims before March 27, 2017. *See* 20 C.F.R §§ 404.1520c, 404.1527.

4 At the second step in the sequential evaluation process the determination whether a mental condition "significantly

mental impairments were non-severe because she had mild limitations in all four broad functional areas (Id.). *See* 20 C.F.R. § 404.1520a(d)(1).

On April 20, 2017, Dr. Barnfield reviewed the administrative record and found that Plaintiff had mild limitations in all four broad functional areas (Tr. 80-81). Thus, Dr. Barnfield also concluded that Plaintiff's medically determinable mental impairments were non-severe (Id.).

After Drs. Meyer and Barnfield rendered their medical opinions, the administrative record received more than 270 pages of additional medical evidence addressing treatment of Plaintiff's physical and mental impairments from May 2017 through August 2018 (Tr. 781-1064). During the administrative hearing, Plaintiff testified extensively about her physical and mental impairments in response to questioning by her counsel and the ALJ (Tr. 39-53).[5]

The ALJ provided an accurate summary of the medical evidence in the record and Plaintiff's testimony during the administrative hearing (Tr. 22-25). After noting that the opinions of Drs. Meyer and Barnfield indicated no more than mild limitations on basic work-related mental tasks, the ALJ appropriately considered the subsequently received medical and testamentary

---

limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4).

5 Notably, at the close of the administrative hearing, the ALJ denied Plaintiff's formal request for a consultative psychological examination because the ALJ concluded it would not be necessary as the notes from the treating physician, Dr. Shah, and Plaintiff's testimony adequately captured Plaintiff's limitations (Tr. 38-39, 57).

evidence in assessing how much weight to give the opinions (Tr. 25).  *See* Kepke, 636 F. App'x at 632-33; Blakely, 581 F.3d at 409.  The ALJ commented as follows:

> Additional medical treatment information developed at the hearing level supports the conclusion that the claimant does have some limits on basic mental tasks.  The undersigned notes that the claimant also suffered a great personal loss after the state agency review which exacerbated her psychological symptoms.  For these reasons, the undersigned affords the state agency physicians who reviewed the evidence regarding a psychological impairment only limited weight.

(Tr. 25).  Plaintiff asserts that the ALJ acknowledged the opinions are stale by concluding the subsequently received evidence warranted greater restrictions.  Instead of relying on the above quoted general comment, the Court will compare the medical opinions of Drs. Meyer and Barnfield with the ALJ's findings to assess whether the ALJ actually concluded their opinions were stale.

The Court will begin with the ALJ's step three findings regarding the degree of limitation in the four broad functional areas (Tr. 19-20).  The ALJ found that the evidence still showed Plaintiff's mental impairments (personality disorder, depressive disorder, and post-traumatic stress disorder) imposed mild limitations in her understanding, remembering, or applying information and mild limitations in her ability to adapt or manage herself (C*ompare* Tr. 19-20, *with* Tr. 65, 80-81).[6]  But the ALJ identified contradictions created by the subsequently received evidence that made it difficult to determine whether Plaintiff's mental impairments imposed more than mild limitations in her ability to interact with others and her ability to concentrate, persist, or maintain pace (Tr. 20).  The ALJ relied on the subsequently received medical and testamentary evidence

---

6 The regulations define "mild limitation" as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2b.

to resolve this close question in Plaintiff's favor (Id.). Specifically, the ALJ found that Plaintiff had moderate, rather than mild, limitations in her ability to interact with others and in her ability to concentrate, persist, or maintain pace (Id.).[7] The analysis above confirms that at step three the ALJ substantially relied on the opinions of Drs. Meyer and Barnfield. But the ALJ also depended on the subsequently received medical and testamentary evidence to justify modifications to the degree of limitation that Plaintiff's mental impairments imposed in two of the four broad areas of function. Thus, at step three, the ALJ's actions indicate she did not consider the opinions of Drs. Meyer and Barnfield stale.

In making the mental RFC finding at step four, the ALJ's analysis confirms that she again relied on the opinions of Drs. Meyer and Barnfield but found that the subsequently received medical and testamentary evidence supported the imposition of some limitations in psychological functioning (Tr. 24-25). Specifically, the ALJ found that Plaintiff has the mental RFC to perform unskilled work that involves simple routine tasks; no more than occasional interaction with coworkers and supervisors but no contact with the public; and she can occasionally tolerate workplace changes if they are gradually introduced (Tr. 21, 22, 24-25).

The analysis in the preceding paragraphs confirms that the ALJ substantially relied on the medical opinions Drs. Meyer and Barnfield, as well as subsequently received medical and testamentary evidence, in making findings about the four broad functional areas at the third step and the mental RFC finding at the fourth step. Furthermore, in making the above-mentioned findings at the third and fourth steps, the ALJ's analysis indicates she relied on Plaintiff's own

---

7 The regulations define "moderate limitation" as '[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2c.

testimony and statements about her activities of daily living as well as certain information in the medical evidence. Specifically, the ALJ depended on the diagnostic opinions, the clinical observations about Plaintiff's behavior, and the conservative nature of treatment received by Plaintiff. Contrary to Plaintiff's claim, the ALJ did not rely on raw medical data in the medical records to make, "out of whole cloth," the four broad functional area findings at the third step and the mental RFC finding at the fourth step. Further, the ALJ's findings at the third and fourth steps are supported by substantial evidence in the record.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

October 16, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:    Counsel